UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 JUN -5 PM 2: 05

CLERK
BY_____
DEPUTY CLERK

ROBERT BALLOU,
AND ALL OTHERS SIMILARLY
SITUATED

        Plaintiff,

        v.

AIR METHODS CORPORATION and
ROCKY MOUNTAIN HOLDINGS, LLC,

        Defendants

Case No. 2:20-cv-0077-cr

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

1.    Plaintiff brings this action individually and on behalf of a class of others similarly situated,[1] against Defendants Air Methods Corporation and Rocky Mountain Holdings, LLC. In this case, the Court must address the intersection of the Airline Deregulation Act of 1976's ("ADA") preemption provision, 49 U.S.C. § 41713(b) (1), and Defendants' efforts to charge and collect for emergency helicopter air ambulance transports. Plaintiff and the Class are patients, the parents of minors transported, and representatives of the estates of deceased patients, transported by Defendants in emergent situations where there was no contractual relationship and no agreement with respect to the transport. Thus, Plaintiff and the Class Members obligation to pay, if any, arises solely out of the common law of the State of Vermont.

### INTRODUCTION

2.    Plaintiff brings this proposed class action on behalf of himself and all others similarly situated, charged by Defendants for the transportation of patients by air ambulance. For individuals like Plaintiff, first responders or medical personnel determine whether a patient needs emergency helicopter transport, contact the Defendants and arrange for the emergency transportation. The need for emergency transportation is acute in every instance. The transported

---

[1] For simplicity, rather than reciting "and the Class" each time Plaintiff is mentioned, this pleading will refer to "Plaintiff." Such usage includes the class that Plaintiff seeks to represent.

patient does not engage in any negotiation with Defendants, and the transportation is not a voluntary undertaking, but rather under the duress of life-threatening or other serious medical conditions requiring immediate treatment at a hospital. Given the dire circumstances, express or informed consent or negotiation of essential terms does not occur. The patients are frequently unconscious, and in all instances incapable of giving meaningful express or informed consent, or otherwise voluntarily assenting to the transportation by the Defendants.

3.       This case is brought on behalf of patients transported under emergent medical circumstances. By virtue of the circumstances, no contractual relationship is formed prior to transport, the Plaintiff's medical condition is emergent, and Defendants do not disclose the amounts they intend to charge for such transportation. Plaintiff has no legal obligation to pay the Defendants the price charged for services, and one may not be imposed them by state law by virtue of the ADA pre-emption: "[A] state … may not enact or enforce a law, regulation, or other provision having the forced and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart."

4.       Defendants bill Plaintiff amounts that vastly exceed both the cost to provide the transport and the fair market value of the transport. Defendants' own executives admitted in a television interview that the "fair charge" for Defendants' services would be, on average, around $12,000, but Defendants charge four times that amount and more, with the average charged around $48,000, four times the "fair charge."

5.       Defendants seek to enter into network agreement with health care insurers and other third-party payors (hereinafter collectively "third-party payors") to assure payment for their emergency air transportation charges. Under these network agreements, third-party payors agree to pay negotiated amounts, and Defendants agree not to balance bill the insured patient for any amount over the network-negotiated amount, i.e., the network negotiated amount. In order to enhance their negotiating position with those third-party payors network, Defendants use the threat of crushing medical charges imposed on the "out-of-network" insureds in order to leverage more

favorable terms from the network. Defendants refuse to reduce their charged amounts to out of network patients in order to preserve their negotiation leverage.

6.      Absent a network agreement, Defendants seek payment from third-party payors. These payors generally are only obligated to pay for reasonable charges for necessary medical expenses.   Nevertheless, Defendants seek payment from third party payors for the entire amount they charge with the similar threat that if the payors to not reimburse the full charged amount, they will proceed against their insureds irrespective of the reasonableness of the charged amounts. Defendants "balance bill" for all unreimbursed amounts even though the charged amounts were never agreed to and already found to be unreasonable through the regular insurance coverage system.  Because the third-party payors only pay the reasonable amount for Defendants' services, Defendants seek to collect the difference through balance billing the Plaintiff.

7.      Under the facts of this case, it is Defendants' practice to respond to first responder requests for emergency air transportation for critically injured patients. Defendants transport the patients but do not negotiate any agreement with the critically injured/ill patients for the costs of this transportation. The reasons are obvious; a critically injured patient cannot voluntarily contract. Nor do the Defendants inform the patient of the cost that will be charged by Defendants for their transportation service before those services are provided.  Rather, Defendants send their bill to the third-party payor and then balance bill the patient once that payor has made its coverage determination, and if no coverage, Defendants bill the patient for the entire amount.

8.      As is customary in healthcare, patients routinely assign their insurance benefits to the healthcare provider so the provider may file claims with third party insurers to obtain payment benefits. Defendants use the assignment to file claims directly with third-party payors to obtain payment asserting that their services were for necessary, emergency medical transportation.  The third-party payors make coverage determinations and issue an Explanation of Benefits detailing the charged amounts and the reasons for their coverage determinations. This is followed by an appeal process which Defendants may, and frequently do initiate.

9.      As part of their predatory scheme. Defendants, post transportation, have Plaintiff sign Assignment of Benefits (AB) and Authorization and Consent (A&C) prepared by Defendants without negotiation nor modification. These forms do not disclose the prices Defendants charge for their services, which in fact the Defendants never disclose, and seek to bind Plaintiff to pay *whatever* Defendants charge irrespective of the reasonableness of the charged amounts. These documents are not voluntary agreements, do not disclose any price terms and are unenforceable.

10.      In all cases of the Plaintiff, the third-party payors determined that the Defendants services were for emergent and medically necessary, but that the amounts charged by Defendants were unreasonable, and pay an amount determined to be reasonable. Defendants enlist the assistance of the Plaintiff in the process and provides form documents for the Plaintiff to sign and transmit to their third-party insurers.

11.      However, where the Plaintiff's insurers or third-party payors do not have network agreements with the Defendants, and reimburse only the reasonable amount for the Defendants' services, Defendants "balance bill" the Plaintiff the difference between third party payor reimbursement, and Defendants charged amount.   The balance billing process also initiates collection efforts, including dunning letters, telephone calls seeking payment, threats to turn the bills over to collection agencies, coercing  payment plans, imposing medical liens against third party recovery, turning the unpaid amounts over to collection agencies, making claims against the estates of deceased patients, imposes cost of collection, attorney's fees and interest on unpaid amounts, and, in some instances,   filing state-court breach of contract claims and other suits against patients.

12.      The Defendants' charges are so exorbitant that almost no third-party payor pays them in full, frequently leaving a staggering amount to be balance billed.  Because the Defendants' balance bills are so high, frequently in the $10,000s, the almost no Plaintiff can pay them and Defendants' actual collection rates for these receivables are less than 10%.

13.      After appeals for third-party payment are exhausted, Defendants proceed with collection efforts against the Plaintiff.

14.    Upon information and belief Defendants engage in this practice to:

a.    Increase the economic pain on the Plaintiff so as to give themselves leverage against third party payors in appealing reimbursement rates;

b.    Threaten Plaintiff with harsh collection efforts to coerce them into negotiated payment plans; and

c.    To gain negotiating leverage in obtaining terms more favorable to them in network agreements with third party payors.

15.    Defendants' billing practices as stated are predatory, unconscionable, and intended to inflict sever economic pain on critically injured Plaintiff solely for the benefit of the Defendants. Essentially a "your money or your life" scheme.

16.    When a patient contests the reasonableness of the charges, Defendants assert that the ADA vests them with plenary power to set whatever price they choose for transportation of patients *in extremis* who have no ability to assent voluntarily to the transportation, or to pay the exorbitant amounts Defendants charge. Behind the shield of the ADA preemption provision Defendants claim the unfettered right to charge any amount without the constraint of reasonableness, and this Court, and all other courts, can only act as collection agencies for their charged amounts.

17.    The ADA, 49 U.S.C. § 41713(b) (1) states in part:

[A] State, political subdivision of a State...may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

18.    Contrary to the Defendants' claims, ADA pre-emption applies equally to Plaintiff and Defendants, patients and air transportation providers. There is no federal law mandating payment for the payment of air carrier services. Applying the ADA preemption provision to the Defendants, means they cannot employ or enforce any State law having the force and effect of law "related to price, route or service of an air carrier". Three United States Supreme Court cases,

*Northwest, Inc. v Ginsburg*, 572 U.S. 273, 280, 134 S. Ct. 1422, 188 L. Ed. 2d 538 (2014); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995) construct the provision broadly, excluding only privately order obligations". [T]he terms and conditions airlines offer and passengers accept, are privately ordered obligations and thus do not amount to a State's enactment or enforcement of any law, rule, regulation, standard, or other provision having the force and effect of law within the meaning of the ADA pre-emption provision." Many circuit court and district court rulings are in accord. Recently, the 10th Circuit Court of Appeals in *Scarlett v. Air Methods,* 922 F. 3d 1053 (10th Cir. 2019) ruled that Defendants' legal entitlement to payment can only be premised upon a contract establishing mutual assent by both Defendants and the patient. No such mutual assent exists between Plaintiff and Defendants.

19.     Plaintiff and the Class include all those who were charged for emergency air transportation by the Defendants for emergency air transportation.

20.     After the transportation is complete, Defendants send a statement for the transportation showing a "base rate" and a "mileage" charge (collectively "charged amount") and demand payment from Plaintiff. The rate that will be charged by Defendants for the "base charge" and "mileage" is known to Defendants prior the transportation, but it is not published on their web site nor otherwise disclosed to Plaintiff prior to transport. The refusal by Defendants to disclose prices is consistent with their longstanding argument that their pricing is some sort of trade secret. The legal impact however, is that Defendant seeks to impose a silent price terms on critically injured Plaintiff who have never voluntarily contracted with the Defendants.

21.     Because the air transportation services provided by the Defendants occur under a medical emergency, the patient transported, in fact and law suffers from the duress of a medical

emergency making them incapable of entering into any voluntary undertaking with the Defendants.

22.     Acertainability of the patients transported, and the identity of all Plaintiff can be determined from Defendants' Information Technology infrastructure. Defendants track every transport, and all related collection efforts.  Defendants employ a standard form documents including Assignment of Benefits, and Authorization and Consent forms.  These forms are executed irrespective of whether the transported patients is capable of assent.  On information and belief, if the patient cannot execute the authorization, a Crew Member of Defendants will sign the agreement on behalf of the patient and indicate the reason why the patient cannot sign, or have someone else sign on behalf of the patient.

23.     The Class includes the patient transported, the legal custodian of the patient (in the case of spouses or minor or mentally disabled patients), the estate of a deceased patient, or any person or entity from whom Defendant has demanded payment for emergency air transport. For each transport, Defendants maintain detailed records with a unique identifier containing the identity of the patient transported and all claims by Defendants for payment.

24.     In this action, Plaintiff, on behalf of themselves, seek declarations with respect to Defendants' legal entitlement to payment from Plaintiff in light of the pre-emption provision of the ADA pre-empting all state common law implying price terms, and the nature and extent of any legal entitlement in Defendants to receive payment in the absence of a non-pre-empted contract claim.

25.     Defendants send a statement for the charged amount to the Plaintiff and demands payments for prices that the Plaintiff and Class never agreed to pay. In the absence of payment, Defendants initiate collections, report the amount charged as an unpaid bill to credit reporting agencies, engage in collection efforts, seek to enforce liens, and initiate lawsuits in state courts, or seek to enforce state law related to the price or services they provide.  Defendants demand payment, initiate collection efforts, and threaten suit in state court for judgments based upon prices

never disclosed and agreed upon for the services provided by the Defendants in spite of the fact that Defendants knew, prior to the transportation, the prices they would charge, and that the ADA pre-empts the Defendants' legal entitlement to payment.

## PARTIES

26.    Defendant Air Methods Corporation is incorporated under the laws of Delaware with a principal place of business in Englewood, Colorado.

27.    Defendant Rocky Mountain Holdings, LLC, is a limited liability company organized under the laws of Delaware with a principal place of business in Cincinnati, Ohio. On information and belief, Defendant Rocky Mountain Holdings, LLC, regularly conducts business in Colorado. On information and belief, Defendant Rocky Mountain Holdings, LLC, is a subsidiary of Defendant Air Methods Corporation.

28.    Plaintiff Robert Ballou resides in Rutland County, Vermont.

## PLAINTIFF'S FACTS

29.    On September 23, 2017, Defendants transported Robert Ballou from Rutland Regional Medical Center in Rutland, Vermont to the University of Vermont Medical Center in Burlington, Vermont.

30.    Following the transport, Defendants billed Plaintiff Ballou $63,360.82, which included a "base" charge of $39,152.92 and an additional $24,207.90 for mileage. The trip was 67 miles, making the charge per mile $361.31.

31.    Mr. Ballou does not recall signing any forms from Defendants prior to or during the transport in which he consented to pay such sums for services provided by Defendants.

32.    Plaintiff Ballou was insured by Medicare, but at the time of the transport, he was only covered by Medicare Part A. As a result, Medicare did not pay anything toward the charges,

leaving Plaintiff Ballou facing Defendants' efforts to collect what Defendants claim to be the full balance of $63,310.82.

33.    Mr. Ballou brings this action individually and on behalf of himself and a class of others similarly situated, against Defendants Air Methods Corporation and Rocky Mountain Holdings, LLC.

34.    Documents related to the Defendant's claim are attached as Exhibit 1.

## JURISDICTION AND VENUE

35.    This Court has original jurisdiction pursuant to 28 U.S.C § 1331. Further, the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.00 and is a class action in which Plaintiff and members of the Class are citizens of states different from Defendants. This court also has federal question jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and the ADA, 49 U.S.C. § 41713(b) (1).

36.    This Court has personal jurisdiction over Defendants because they are conducting business throughout the United States, including the State of Vermont; Defendants have sufficient minimum contacts with the various states of the United States, and the State of Vermont; and sufficiently avail themselves of the markets of the various states of the United States, including the State of Vermont, to render proper the exercise of jurisdiction by this Court.

37.    Venue is proper in this District under 28 U.S.C. § 1391(b) (2) because a substantial portion of the acts or omissions complained of occurred in this District.

38.    Venue is also proper because: (a) Defendants conduct business in this District and have intentionally availed themselves of the laws and markets within this District; (b) do substantial business in this District; and (c) are subject to personal jurisdiction in this District.

## DEFENDANTS' PRIOR STATE COURT LITIGATION

39.     On information and belief, Defendants have, without any legal entitlement to payment:

a.      Filed multiple state-court breach-of-contract suits in multiple states to collect their charges, both by direct actions against a transported person and by way of making claims in interpleader actions;

b.      Filed proof of claims in multiple bankruptcy cases asserting a right to be paid based on state-law breach-of-contract theories;

c.      Filed claims in estate cases to recover their charges for transportation of a deceased person in multiple cases;

d.      Sought more compensation from Medicare, Medicaid and Tricare insureds than is allowed under the relevant payment schedule for providers that accept assignment of benefits from Medicare, Medicaid and Tricare patients;

e.      Sought more compensation from patients with commercial insurance, employer-sponsored health benefits plans, and other non-governmental third-party payers than what the insurance industry has determined to be the uniform, customary, and reasonable rate in each locality;

f.      Coerced class members to enter payment plans to pay their full billed amount in monthly installments paid over decades with interest; and

g.      Enforced, or sought to enforce, subrogation claims or liens against personal injury claims or recoveries seeking their full-billed amounts.

40.     Defendants' collection efforts against Plaintiff were ongoing at the time this action was filed, and Defendants will continue efforts to collect their improperly billed amounts in the absence of relief granted by the Court in this action.

41.     There is a live and ongoing dispute between Plaintiff and Defendants.

## CLASS ACTION ALLEGATIONS

42.     This action is brought and may be maintained as a class action pursuant to Fed.

R. Civ. P. 23.  The requirements of Fed. R. Civ. P. 23(a), (b) (1), (b) (2), and (b) (3), are met

with respect to the Class defined as follows:

> All persons billed by Defendants, or who paid a bill from Defendants, for air medical transport that Defendants carried out from a pickup location in Vermont.
>
> Excluded from both Classes are Defendants, any entity in which Defendants have a controlling interest or which have a controlling interest of Defendant, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

43.     Plaintiff expect to seek certification of the Class under Rules 23(b) (1), (b) (2), (b)

(3), and (c) (4) of the Federal Rules of Civil Procedure.

44.     The Classes will include only persons having viable claims under the applicable

statute of limitation.  However, the Class claims the benefit of *American Pipe* tolling because of

previous class cases filed against Defendants. See *American Pipe & Constr. Co. v. Utah*, 414

U.S. 538 (1974).

45.     Rule 23 permits Plaintiff the right to redefine the Classes prior to

class certification.

46.     The members of the Classes are so numerous that joinder of all members

is impracticable.  The exact number of Class Members is unknown as such information is in

the exclusive control of Defendants.  However, due to the nature of the trade and commerce

involved, Plaintiff believe the Proposed Classes consists of thousands of Class Members.

Defendants themselves claim that they transport more than 100,000 patients each year, operating

out of more than 300 bases in the 48 contiguous states. See: https://www.airmethods.com/about-

us.

47.     Common questions of law and fact affect the rights of each Class Member and

a common relief by way of declaratory judgment and injunction, including at least the following:

a.   Did the Plaintiff enter into any voluntary agreement to pay the Defendants their charged amounts?

b.   Did Defendants disclose the prices, including, but not limited to their fixed mileage price and "helicopter rotor base" price for the transportation to Plaintiff prior to transportation?

c.   Were Defendants' services for the emergency air transportation of critically injured Plaintiff/patients?

d.   Did the critically injured patients, including the Plaintiff, or a legally authorized representatives, voluntarily agree to pay Defendants whatever Defendants charged without any right on behalf of the patient or Plaintiff to contest the reasonableness of those charges?

e.   Can a patient needing emergent medical air transportation voluntarily assent to an enforceable contract for that transportation where the price terms is silent, and the ADA prevents the Court from supplying a price?

f.   What is the contractual relationship between Defendants and the Plaintiff, if any?

g.   Does the ADA preempt Defendants from collecting a reasonable amount, and or any amount, from Plaintiff and Class Members for transport?

h.   What is Defendants' legal entitlement to payment from the Plaintiff or from third party payors on behalf of the Plaintiff under Vermont law?

i.   Whether the Court should grant injunctive relief to Plaintiff who did not engage in any voluntary undertaking with the Defendants for their transportation prevent collection efforts by Defendants for their charged amounts?

j.   Whether Plaintiff who paid or had a third-party payor pay some or all of the charges entitled to restitutionary relief for payment where there is no obligation to pay?

k.   Whether Defendants should be enjoined from seeking to collect amounts not agreed to by the parties.

l.   Whether Defendants are entitled any payment from Plaintiff and, if so, the proper mechanism to determine the amount owed?

48.   The claims and defenses of the n a m e d Plaintiff are typical of the claims and defenses of the Classes. Defendants sought to collect an alleged debt for which they have no valid basis for collection since any efforts to impose a price by any court would be preempted under the ADA.

49.     Plaintiff will fairly and adequately assert and protect the interests of the Classes. Specifically, Plaintiff has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Classes. Neither the named Plaintiff nor putative class counsel have a conflict of interest that will interfere with the maintenance of this class action.

50.     A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.     The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

b.     Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

c.     Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

d.     Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

e.     There are no unusual legal or factual issues which would create manageability problems; and

f.     Class adjudication is superior to individual adjudication of the claims at issue in this case.

45.     In this action, Patients, on behalf of themselves and the Proposed Class, seek:

a.     To enjoin Defendants from engaging in any collection of their charged amounts;

b.     For Declarations regarding the respective legal rights of the parties with respect to Patients' obligation to pay, and Defendants' legal right to receive payment in the absence of an express contract;

c.     For Declarations as to whether any contract exists between Defendants and Patients, and if so, the terms of their bargain;

d.    For Declarations regarding the legal rights of the Defendants to receive payment of the any sum, or any sum exceeding the reasonable amount determined by Patients' third-party payors;

e.    For Declarations as to the right of Defendants to initiate and pursue collection efforts with respect to Balance Billed charges under the circumstances; and,

f.    for Declarations the legal rights of the parties with respect to the application of the ADA, 49 U.S.C. § 41713(b) (1) upon the legal right of Defendants to charge and the legal obligation of the Patients to pay for air medical transportation services beyond reasonable value of those charges.

## CAUSES OF ACTION

### For a First Cause of Action

### Injunctive and Declaratory Relief Pursuant to 28 U.S.C. § 2201

46.    Plaintiff incorporates the previous paragraphs outside of this Count as though set forth herein.

51.    28 U.S.C §2201 provides as follows:

In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

52.    Prior to the provision of services, no negotiation of contract terms regarding the price of Defendants' transportation services took place and Plaintiff, the Class and Defendants did not enter into any voluntary agreement to pay Defendants' charged amounts for transport services.

53.    Defendants have engaged in and threatened to engage in

- Collection of the amount charged against the Plaintiff, irrespective of whether the amount charged is a reasonable value for the services provided;

- Have wrongfully engaged Plaintiff in negotiations with their third-party insurers to pay medical bills they did not agree to pay; and

- Sought collection of their charged amounts when their legal entitlement is to payment is preempted by the ADA.

54.    Defendants have engaged in and threaten collection efforts to recover, accumulated interest and fees on the unpaid balance, reported the unpaid charged amount as Bad Debt to credit reporting agencies, and ultimately filed suit in state court for the amounts charged, or for the purpose of coercing Patients in compromise payments that they do not owe.

55.    In the course of collecting its charged amounts, especially when sued by those charged, Defendants assert that all state law is preempted by the ADA, denying Patients notice and an opportunity to be heard on critical questions of Defendants' entitlement to payment, including but not limited to whether there is an agreement between the parties to pay Defendants charged amount, whether the charged amount is reasonable for the services it provides, and whether any mutual assent was manifest prior to the transportation of the patient.

56.    Plaintiff seeks injunctive and declaratory relief for the purposes of determining questions of actual controversy between the Patients and Defendants.

57.    Defendants have acted in a uniform manner in (a) failing to enter into express agreements with respect to their charged amount for transportation services before rendering those services, (b) seeking payment from third party payors, (c) balance billing Patients in the event the charged amounts are not paid, (d) reporting unpaid balances as Bad debt even though no determination of the reasonableness of the charge has been determined, (e) engaging in collection efforts, including suit in state court, or under state law, and (f) coercing compromise payments that are not legally owed.

58.     Defendants have acted or refused to act on grounds that apply generally to Patients such that declaratory relief to determine (a) whether Defendants' Patients have an enforceable agreement for the amount charged, (b) the amount to which Defendants are entitled in the absence of an agreement for payment, and (c) whether and to what extent the ADA pre-empts the employment of the common law of contracts to these factual circumstances, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Proposed Class as a whole within the meaning of Fed. R. Civ. P. 23.

59.     There is an actual dispute and controversy between Patients and Defendants as to whether Defendants can (a) demand payment for services with respect to which the price term is silent, (b) engage in collection efforts where no legally enforceable contract exists, (c) impose interest and costs of collection on Plaintiff and the Class, (d) attempt to collect the amounts charged under the circumstances, and (e) seek and receive third party payment for the legal obligations of plan beneficiaries beyond the amount determined by third party payors of the reasonableness of the charges.

60.     Defendants have demanded payment from Plaintiff, and initiated collection efforts claiming that the unpaid amounts demanded are bad debts and referred the demands to collection thereby adversely affecting Plaintiff's credit.

61.     Plaintiff has no adequate remedy at law.

62.     Plaintiff seeks declarations to determine his rights and the rights of the Proposed Class Members, in particular:

> a.   The Court finds that Defendants and Plaintiff, and the Class did not enter into any contract, either express or implied-in-fact, for Plaintiff and the Class to pay the amounts charged by the Defendants for the transportation services it provided;

b.  The Court finds that Defendants have engaged in collection efforts against s
    and the Class for amounts that the Plaintiff and the Class did not contractually
    agree to pay;

c.  The Court finds that Defendants have engaged in collection efforts against
    Plaintiff and the Class for amounts concerning which there was no mutual
    assent manifest by the Plaintiff and the Class prior to the rendering of the
    services charged;

d.  The ADA pre-empts the imposition of any state common law contract principles
    that impose terms upon Plaintiff which those parties did not expressly assent to
    prior to the air medical transportation services provided to them;

e.  The Court finds that the emergency medical circumstances of Defendants'
    medical air transportation were such that patients transported cannot be implied
    to have entered into any contract for transportation, and in particular any
    agreement to pay whatever Defendants charged;

f.  The Court finds that ADA pre-empts application of state law imposing or
    implying any agreement upon Plaintiff to pay Defendants charged amounts;

g.  The Court finds that Plaintiff's third-party payors' determinations of the
    reasonable value of the Defendants' services is sufficient evidence of
    reasonableness under the circumstance where Defendants have submitted a
    claim to third-party payors; and

h.  The Court finds that Defendants' collection of any sums, absent an enforceable
    contract with the Plaintiff charged, was unlawful and the sums received by
    Defendants disgorged.

63.     Plaintiff and the Proposed Class further seek a prospective order from the Court

requiring Defendants to: (1) cease all balance billing and collection efforts with respect to

outstanding bills for air medical transportation service until this Court determines Defendants'

legal entitlement to payment of its charged amounts makes a determination of the methodology

for determining their reasonable value; and (2) account for all sums collected for air medical

transportation services provided to Plaintiff.

64.     Defendants' collection efforts damage the credit of Plaintiff and the Class, have

caused, and continue to cause Plaintiff and those in the Plaintiff Class anxiety, embarrassment and

humiliation; have caused them to incur legal fees and litigation expenses; exposed Plaintiff and the Class to claims for interest on unpaid Defendants' charges and vexing and harassing collection efforts. Because of Defendants' practices as described above, Plaintiff and the Proposed Class have suffered, and will continue to suffer, irreparable harm and injury.

65.    Accordingly, Plaintiff and Members of the Proposed Class respectfully ask the Court to issue an injunction ordering Defendants to (1) cease and desist their practice of filing third-party reimbursement claims absent an enforceable contract to collect their charged amount; and (2) provide for an accounting of all sums received by Defendants during the last 10 years, where Defendants submitted a claim to third-party payors payment without basing that claim on a contract with the transported party.

## PRAYER FOR RELIEF

**THEREFORE**, Plaintiff, individually and on behalf of the Class of persons described herein, prays for an Order as follows:

a)    Entering an order certifying the Classes (and subclasses, if applicable), designating Plaintiff as the class representatives, and designating the undersigned as class counsel;

b)    Awarding Plaintiff all costs and disbursements, including attorneys' fees, experts' fees, and other class action related expenses;

c)    Imposing a constructive trust, where appropriate, on amounts received by Defendants from third-parties, or Plaintiff in the absence of a contract with the transported party;

d)    Issuing appropriate declaratory and injunctive relief, as requested in the Complaint, including to declare the whether the parties have an enforceable contract for the payment of Defendants' services together with the terms of that contract; the respective rights and obligations under the contract; and, the impact of the Air Line

Deregulation Act preemption provisions have on the parties respective rights and obligations under that contract;

e)    Awarding pre-judgment and post-judgment interest; and

f)    Granting such further relief as the law allows and the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand a trial by jury on all claims and issues.

DATED June 5, 2020.

PAUL FRANK + COLLINS P.C.

By

Stephen Soule, Esq.
P.O. Box 1307
Burlington, Vermont 05401
Telephone: 802-658-2311
Fax: 802-658-0042
ssoule@pfcLaw.com

By:    /s/ Ed White, Esq.
Edward L. White, P.C.
829 East 33rd Street
Edmond, Oklahoma 73013
Phone: (405) 810-8188
Fax: (405) 608-0971
ed@edwhitelaw.com

ROBERT BALLOU AND ALL
OTHERS SIMILARLY
SITUATED

7918963_1:13732-00001