U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 AUG -5 PM 12: 18

CLERK
BY ℓₜw
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ROBERT BALLOU, and all others )
similarly situated, )
)
Plaintiffs, )
)
v. ) Case No. 2:20-cv-00077
)
AIR METHODS CORPORATION and )
ROCKY MOUNTAIN HOLDINGS, LLC, )
)
Defendants. )

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING LEAVE TO AMEND
(Doc. 16)

Plaintiff Robert Ballou brings this putative class action against Defendants Air Methods Corporation ("Air Methods") and Rocky Mountain Holdings, LLC ("Rocky Mountain") (collectively, "Defendants") on behalf of himself and other persons who were billed by or paid a bill from Defendants for air medical transport services from a pickup in Vermont (the "Vermont Putative Class").

On August 31, 2020, Defendants filed a motion to transfer venue and, in the alternative, to dismiss or to stay. (Doc. 16.) On September 30, 2020, Plaintiff filed an opposition and on October 23, 2020, Defendants filed a reply. By separate Text Order, the court denied Defendants' motion to transfer venue and to stay.

Plaintiff is represented by Edward L. White, Esq., and Stephen J. Soule, Esq. Defendants are represented by David A. King, Esq., Jessica J. Smith, Esq., Matthew J. Smith, Esq., and Walter E. Judge, Jr., Esq.

I.      **The First Amended Complaint.**[1]

Plaintiff is a resident of Rutland County, Vermont and brings this action on behalf of himself and the Vermont Putative Class, defined as:

> All persons billed by Defendants, or who paid a bill from Defendants, for air medical transport that Defendants carried out from a pickup location in Vermont.
>
> Excluded from [the Putative] Class[] are Defendants, any entity in which Defendants have a controlling interest or which have a controlling interest of Defendant[s], and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

(Doc. 2 at 11, ¶ 42.)

Defendant Air Methods is a corporation incorporated in Delaware and with its principal place of business in Englewood, Colorado. Defendant Rocky Mountain is a limited liability company organized under the laws of Delaware and with its principal place of business in Cincinnati, Ohio. Defendant Rocky Mountain allegedly is a subsidiary of Defendant Air Methods and conducts business in Colorado.

Plaintiff alleges that Defendants provide air ambulance services across the United States whereby they transport patients in emergency circumstances, often while unconscious. "Given the dire circumstances, . . . negotiation of essential terms does not occur[]" and Plaintiff contends that patients are "in all instances incapable of giving meaningful express or informed consent, or otherwise voluntarily assenting to the transportation by the Defendants[]" so that "no contractual relationship is formed prior to transport[.]" *Id.* at 2, ¶¶ 2, 3.

According to Plaintiff, Defendants' billing amounts "vastly exceed both the cost to provide the transport and the fair market value of the transport." *Id.* at 2, ¶ 4. When a

---

[1] Defendants correctly note that Plaintiff asserts legal arguments in his First Amended Complaint which must be disregarded. *See Gleis v. Buehler*, 2012 WL 1194987, at *5 (D. Conn. Apr. 10, 2012) (holding "it is inappropriate to include legal argument and briefing within a complaint as Plaintiff has done here"); *see also Jennings v. Hunt Cos.*, 367 F. Supp. 3d 66, 71 (S.D.N.Y. 2019) (concluding that "it is generally inappropriate to include a legal argument . . . within a complaint") (internal quotation marks omitted) (ellipses in original).

patient contests the reasonableness of a charge by Defendants, they assert that the Airline Deregulation Act (the "ADA") "vests them with plenary power to set whatever price they choose for transportation of patients[.]" *Id.* at 5, ¶ 16.

On September 23, 2017, Defendants transported Plaintiff from Rutland Regional Medical Center in Rutland, Vermont to the University of Vermont Medical Center in Burlington, Vermont. Following the transport, Defendants billed Plaintiff $63,360.82, which included a base charge of $39,152.92 and an additional $24,207.90 as a mileage charge. The trip was sixty-seven miles, resulting in a per mile charge of $361.31. Plaintiff does not recall signing any forms in which he consented to pay Defendants prior to or during the transport. Plaintiff was insured by Medicare, but was only covered by Medicare A. As a result, Medicare did not pay any portion of the charges for Defendants' transport services. Plaintiff alleges that collection efforts against him were on-going when this lawsuit was filed and thus he faces "Defendants' efforts to collect what Defendants claim to be the full balance of $63,310.82." *Id.* at 9, ¶ 32. Plaintiff does not contend that he paid Defendants any portion of the amount allegedly due.

Plaintiff asserts one cause of action against Defendants for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201. He requests the court to declare that:

(1) Defendants did not enter a contract, either express or implied, with Plaintiff or any of the Vermont Putative Class for transportation services;

(2) Defendants have engaged in collection efforts against Plaintiff and the Vermont Putative Class for amounts they did not contractually agree to pay;

(3) Defendants have engaged in collection efforts against Plaintiff and the Vermont Putative Class for "amounts concerning which there was no mutual assent manifest by the Plaintiff and the [Vermont Putative] Class" (Doc. 2 at 17, ¶ 62(c));

(4) the ADA pre-empts the imposition of state common law contract principles that impose terms upon Plaintiff and the Vermont Putative Class to which those parties did not expressly assent prior to air medical transportation;

3

(5) the nature of Defendants' emergency medical transportation was such that Plaintiff and the Vermont Putative Class could not have entered into an implied contract for transportation or any agreement to pay whatever Defendants charged;

(6) the ADA pre-empts application of state law imposing or implying an agreement upon Plaintiff and the Vermont Putative Class to pay Defendants' charged amount;

(7) "Plaintiff's third-party payors' determinations of the reasonable value of the Defendants' services is sufficient evidence of reasonableness under the circumstance where Defendants have submitted a claim to third-party payors" *id.* at 17, ¶ 62(g); and

(8) Defendants' collection of any sums, absent an enforceable contract, "was unlawful and the sums received by Defendants [must be] disgorged." *Id.* at 17, ¶ 62(h).

In addition to declaratory relief, Plaintiff seeks a preliminary injunction requiring Defendants to:

(1) cease all balance billing and collection efforts with respect to outstanding bills for air medical transportation services until the court determines Defendants' legal entitlement to payment of its charged amounts and makes a determination of the methodology for determining their reasonable value; and

(2) account for all sums collected for air medical transportation services provided to Plaintiff as well as an injunction ordering Defendants to: (a) cease and desist their practice of filing third-party reimbursement claims absent an enforceable contract; and (b) provide an accounting for all sums received by Defendants during the last ten years for any claim Defendants submitted to a third-party payor without proof of a contract to provide transportation services.

The First Amended Class Action Complaint states that "Plaintiff['s] and the [Vermont Putative] Class Members['] obligation to pay, if any, arises solely out of the common law of the State of Vermont." *Id.* at 1.

4

## II. Conclusions of Law and Analysis.

### A. Whether Plaintiff's Claims Should be Dismissed Because his Requests for Declaratory and Injunctive Relief are Pre-empted under the ADA.

Defendants assert that Plaintiff's requests for declaratory and injunctive relief as well as his proposed remedies are pre-empted under the ADA, which creates no private right of action and which prohibits states from "enact[ing] or enforc[ing] a law . . . related to a price, route, or service of an air carrier that may provide air transportation[.]" 49 U.S.C. § 41713(b)(1). The "ordinary meaning" of the ADA's use of "the key phrase" "relating to" "is a broad one" that reflects "a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (internal quotation marks omitted). The purpose of ADA pre-emption is "[t]o ensure that the States would not undo federal deregulation with regulation of their own[.]" *Id.* at 378.

The Supreme Court has held that the ADA pre-empts state regulations related to air carriers but allows the enforcement of voluntarily undertaken contractual obligations. *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995) (concluding that there is a "distinction between what the State dictates and what the airline itself undertakes [which] confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement"). Several Circuit Courts of Appeals have found the *Wolens* exception a narrow one confined to the parties' agreed-upon terms which does not extend to state law imposed obligations.[2] In *Ginsberg*, the Supreme Court agreed, holding that a state-created implied

---

[2] *See, e.g., Schneberger v. Air Evac Ems, Inc.*, 749 F. App'x 670, 678 (10th Cir. 2018) (finding *Wolens* offers a "narrow" exception to ADA pre-emption); *Brown v. United Airlines, Inc.*, 720 F.3d 60, 70 (1st Cir. 2013) (observing that "[t]he *Wolens* exception is very narrow," involving only "private terms agreed to by the parties" but not terms that "arise out of state-imposed obligations"); *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) ("[A]n otherwise preempted claim may remain viable under the ADA if it falls within the two-prongs of the *Wolens* exception: 1) the claim alleged only concerns a self-imposed obligation; and 2) no enlargement or enhancement of the contract occurs based on state laws or policies external to the agreement" but *Wolens* does not allow the court "to reach beyond the contract and interpret a variety of external laws that were not expressly incorporated in the contract"); *Harris v. Am. Airlines, Inc.*, 55 F.3d 1472, 1477 (9th Cir. 1995) (observing "[t]he Court in *Wolens* only

5

covenant of good faith and fair dealing claim was pre-empted because it is a "state-imposed obligation" and applied under state law to "'every contract.'" *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 286-87 (2014) ("When the application of the implied covenant depends on state policy, a breach of implied covenant claim cannot be viewed as simply an attempt to vindicate the parties' implicit understanding of the contract."). In *Ginsberg*, it distinguished *Wolens* by holding "[a] State's implied covenant rules will escape pre-emption only if the law of the relevant State permits an [air carrier] to *contract around* those rules[.]" *Id.* at 288 (emphasis supplied).

Following *Ginsberg*, the Tenth Circuit has held that, "[i]f the parties can contract around the implied price term and the implied price term 'effectuate[s] the intentions of [the] parties or . . . protect[s] their reasonable expectations,' then the claim is not pre-empted." *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1065 (10th Cir. 2019) (alterations in original) (quoting *Ginsberg*, 572 U.S. at 286-88).[3] It observed that "[o]n remand, the district court can examine each of the . . . Plaintiffs' allegations under the applicable state law to determine whether an express or implied-in-fact contract was formed." *Id.* at 1068. The district court interpreted this directive as permitting a "declaratory judgment on the existence of a contract[,]" *Scarlett v. Air Methods Corp.*, 2020 WL 2306853, at *4 (D. Colo. May 8, 2020), without authorizing any further relief.[4] It ultimately dismissed the plaintiffs' "declaratory judgment claims" that "request injunctive and equitable relief in

---

excluded private contract terms from the wide scope of preemption"), *overruled on other grounds by Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir. 1998).

[3] Although the Tenth Circuit upheld dismissal of a plaintiff's breach of contract claim because a "state-law claim that requires a court to determine a reasonable price for air-ambulance services self-evidently affects the price of those services[,]" *Schneberger*, 749 F. App'x at 678, it did not address a "contract around argument" under *Ginsberg* because "[t]he plaintiffs . . . have not pursued this argument on appeal; indeed, remarkably, they do not even cite to *Ginsberg* in their appellate briefing. Therefore, we are free to deem their contract-around argument abandoned (i.e., waived) and not consider it." *Id.* at 678 n.9.

[4] *See Scarlett v. Air Methods Corp.*, 2020 WL 2306853, at *3 (D. Colo. May 8, 2020) (finding "the Tenth Circuit has narrowly defined the Court's remaining role in this case: under *Scarlett*, I may declare whether or not a contract exists. . . . If I conclude that a contract does not exist, I cannot, without violating the ADA, impose any further remedy").

6

the absence of a contract[,]" including a request that the court order disgorgement and a prohibition on billing for services. *Id.* at *3.

Plaintiff argues that he "properly plead[s] the elements of a declaratory [judgment] claim" (Doc. 22 at 18) and the case can proceed on this basis. Under Second Circuit precedent, however, "[t]he [Declaratory Judgment Act] provides a remedy, not a cause of action." *Springfield Hosp. v. Hofmann*, 2011 WL 3421528, at *2 (D. Vt. Aug. 4, 2011), *aff'd*, 488 F. App'x 534 (2d Cir. 2012). "Similarly, a request for injunctive relief is not a separate cause of action." *Id.* Accordingly, "a request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights." *Id.* at 3 (internal quotation marks omitted). Plaintiff must therefore allege an underlying cause of action. *See Springfield Hosp.*, 488 F. App'x at 535 (observing "the Hospital cannot maintain an action for a declaratory judgment without an underlying federal cause of action. A prayer for relief, standing alone, simply does not satisfy the requirement that a case or controversy exist") (citation omitted).

Although in his opposition brief, Plaintiff asserts that "Defendants could have 'contracted around'" (Doc. 22 at 15) the imposition of a price term, he makes no similar allegations in his First Amended Complaint.[5] To the contrary, he asserts that no contractual negotiations took place and no contract was formed. He further disclaims any obligation to pay Defendants a contract price or a reasonable price. *See* Doc. 2 at 2, ¶ 3 ("Plaintiff has no legal obligation to pay the Defendants the price charged for services, and one may not be imposed [on] them by state law by virtue of the ADA pre-emption[.]").

Because the instant case is not one in which there is a clear "contract around" claim, "[t]he ADA's pre-emption provision prohibits courts from imposing an equitable remedy in the absence of a contract because the remedy would reflect the court's policy

---

[5] Plaintiff may not amend his claims by "advocating a different theory of liability in an opposition brief wholly unsupported by factual allegations in the complaint." *Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810 F. App'x 17, 20 (2d Cir. 2020) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).

7

judgments, not the parties' mutual assent." *Scarlett*, 922 F.3d at 1068. Stated differently, for a "contract around" case, there must be a contract in the first instance. Here, Plaintiff repeatedly alleges that no contract exists. As a result, his claims do not fit within the "narrow" *Wolens* exception.

Courts, including ones that have considered complaints similar to Plaintiff's First Amended Complaint, have attempted to straddle ADA pre-emption and a state-imposed remedy by finding the ADA does not pre-empt the application of state law where the air carrier retains decision-making power regarding the challenged term. *See, e.g., Med. Mut. of Ohio v. Air Evac EMS, Inc.*, 341 F. Supp. 3d 771, 782 (N.D. Ohio 2018) (concluding that "the possibility that a reasonable price term may be supplied for the contract implied-in-fact—if it is found to exist—does not [a]ffect whether the ADA preempts the breach of contract claim"); *Wray v. PHI Air Med. LLC*, 2018 WL 6181664, at *4 (D. Ariz. July 9, 2018) (observing that a court's ability to imply a term of reasonableness in the contract may be sufficient to avoid pre-emption because the "[d]efendant could have 'contracted around' a court-imposed [reasonable] price"); *Wagner v. Summit Air Ambulance, LLC*, 2017 WL 4855391, at *4 (D. Mont. Oct. 26, 2017) (holding that the Supreme Court's "decisions leave room for suits . . . that seek to vindicate the *parties'* understanding of the contract, not only the air carrier's understanding of the contract") (emphasis in original).

Under Vermont law,

There are two kinds of implied contracts, as the term is ordinarily used in the books: (1) Where the minds of the parties meet and their meeting results in an unexpressed agreement; (2) where there is no meeting of the minds. The former class embraces true contracts which are implied in the sense that the fact of the meeting of minds is inferred. Such contracts are more accurately defined as resting upon an implied promise in fact. The latter class embraces contractual obligations implied by the law where none in fact exists.

In many cases where there is no contract, the law upon equitable grounds imposes an obligation often called quasi contractual. Such obligations are not contracts in the proper sense, since they are created by law and not the parties. In such so-called contracts the law creates a fictitious promise for the purpose of allowing the remedy by action of assumpsit. Though created by law and clothed with the semblance of a contract, the obligation is not a

8

contract at all. The proper term for such obligation is "quasi contracts," a term borrowed from the Roman law. . . . Much of the apparent confusion in the cases arises from a failure to distinguish clearly between implied contracts in fact and contracts implied in law, or constructive contracts.

*Morse v. Kenney*, 89 A. 865, 866 (Vt. 1914) (citations omitted). An implied in fact contract thus requires "a mutual intent to contract[,]" *id.* at 867, which Plaintiff specifically disavows.[6]

A contract implied by law, also known as a "quasi contract" or claim of unjust enrichment, may be found if "(1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value." *Center v. Mad River Corp.*, 561 A.2d 90, 93 (Vt. 1989). Several Circuit Courts of Appeals have found this type of contractual claim does not fall within the *Wolens* exception.[7] Even if it did, Plaintiff does not allege the essential elements of a quasi contract claim. For example, he neither alleges he conferred a benefit on Defendants for the air transportation services rendered to him, nor alleges that he has standing to recover any Medicare or

---

[6] For this reason, Plaintiff's reliance on *Byler v. Air Methods Corp.*, 823 F. App'x 356 (6th Cir. 2020) is misplaced. There, the Sixth Circuit observed:

Plaintiffs leave no doubt that they attempt to plead an implied-in-fact contract. Their complaint states that . . . an implied contract existed based on a promise that may be inferred from the parties' conduct. These were real contracts based on mutual assent of the parties and an intentional manifestation of the parties' assent."

*Id.* at 362.

[7] *See, e.g., Brown*, 720 F.3d at 70-71 (ruling that an unjust enrichment claim "turns on sources external to any agreement between the parties—such as 'considerations of equity and morality,'—and is predicated on the *lack* of any agreement") (citation omitted) (emphasis in original); *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 854 (8th Cir. 2009) (noting that although a "four-corners claim solely between the parties that does not derive from the enactment or enforcement of state law" is within the *Wolens* exception, a claim that "require[s] a resort to the laws of [the state] for its adjudication" is not); *Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1344 (11th Cir. 2005) (observing that the *Wolens* exception does not apply where a claim "seeks to enforce state-imposed obligations"); *Smith v. Comair, Inc.*, 134 F.3d 254, 258 (4th Cir. 1998) (holding that the ADA pre-empts contract claims that "can only be adjudicated by reference to law and policies external to the parties' bargain").

9

insurance benefits conferred on his behalf. Any quasi contract claim thus fails in its first step. Moreover, just as he disavows both a contract and an implied in fact contract with Defendants, Plaintiff argues that his relationship with Defendants is "at most, an implied in law contract" which he concedes is "preempted by the [ADA]." (Doc. 22 at 1.) Coupled with his repeated and unequivocal statements that he does not seek a state law imposed obligation to pay Defendants anything, there is no factual basis in the First Amended Complaint pursuant to which this court could find Defendants retained decision-making with regard to a contractual term.

Plaintiff does not plausibly allege the essential elements of an underlying claim; his single cause of action for declaratory or injunctive relief cannot serve that purpose. For this reason, pursuant to Fed. R. Civ. P. 1 and 12(b)(6), Plaintiff fails to state a claim that is not pre-empted by the ADA and for which relief may be granted. Defendants' motion to dismiss must therefore be GRANTED.

### B. Whether Plaintiff's Disgorgement Claim is Pre-Empted.

Defendants argue that even if Plaintiff was otherwise entitled to declaratory and injunctive relief, Plaintiff's request for disgorgement[8] and for a constructive trust are pre-empted because they would reduce Defendants' compensation to zero which is inconsistent with the ADA which was enacted "to promote 'efficiency, innovation, and low prices' in the airline industry through 'maximum reliance on competitive market forces and on actual and potential competition.'" *Ginsberg*, 572 U.S. at 280. Faced with similar claims, courts have held a disgorgement claim is pre-empted under *Ginsberg* because it would "either eliminate[] or reduce[]" the rate for air carrier services. *Id.* at 284; *see also Scarlett*, 2020 WL 2306853, at *3 ("The plaintiffs ask me to impose an equitable remedy . . . disgorgement . . . in the absence of a contract. Because I find that the Tenth Circuit's binding language cannot be avoided here, under *Scarlett* the plaintiffs' [relief] . . . is pre-empted by the ADA."); *Chanze v. Air Evac EMS, Inc.*, 2018

---

[8] Plaintiff requests the court declare that "Defendants' collection of any sums, absent an enforceable contract with the Plaintiff charged, was unlawful and the sums received by Defendants disgorged." (Doc. 2 at 17, ¶ 62(h).)

WL 5723947, at *5 (N.D. W. Va. Nov. 1, 2018) (holding that a claim seeking declaratory and injunctive relief and seeking "a disgorgement of all illegal profits retained by Air Evac and an injunction preventing it from charging and/or collecting illegal profits in the future" is "also preempted by the ADA"). Here, the court need not decide this issue because it dismisses the First Amended Complaint on other grounds.

### C. Whether to Grant Leave to Amend.

Pursuant to Fed R. Civ. P. 15(a), courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R Civ. P. 15(a)(2). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Because at this juncture the court cannot find that any claims asserted by Plaintiff would be futile, and because there is no other ground on which to deny leave to amend, Plaintiff is hereby GRANTED leave to amend within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

### CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss (Doc. 16) and GRANTS Plaintiff leave to amend within twenty (20) days of the date of this Opinion and Order.

Dated at Burlington, in the District of Vermont, this 5th day of August, 2021.

Christina Reiss, District Judge
United States District Court

11