UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**2021 AUG 25  PM 3: 17**

CLERK

BY _____
DEPUTY CLERK

ROBERT BALLOU,
AND ALL OTHERS SIMILARLY
SITUATED

        Plaintiff,

        V.

AIR METHODS CORPORATION and
ROCKY MOUNTAIN HOLDINGS, LLC,

        Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:20-CV-00077

## SECOND AMENDED CLASS ACTION COMPLAINT

## PARTIES

1.      Defendant Air Methods Corporation is incorporated under the laws of Delaware with a principal place of business in Englewood, Colorado.

2.      Defendant Rocky Mountain Holdings, LLC, is a limited liability company organized under the laws of Delaware with a principal place of business in Cincinnati, Ohio. On information and belief, Defendant Rocky Mountain Holdings, LLC, is a subsidiary of Defendant Air Methods Corporation.

3.      Plaintiff Robert Ballou resides in Rutland County, Vermont, and is a citizen of the State of Vermont.

## PLAINTIFF'S FACTS

4.      On September 23, 2017, Plaintiff suffered a heart attack. He was transported to Rutland Regional Medical Center in Rutland, Vermont by ground ambulance. Medical personnel at Rutland Regional determined that Plaintiff required a higher level of care than they could provide and elected to have Defendants transport Plaintiff to the University of Vermont Medical Center in Burlington, Vermont.

5.      Following the transport, Defendants billed Plaintiff $63,360.82, which included a "base" charge of $39,152.92 and an additional $24,207.90 for mileage. The trip was 67 miles, making the charge per mile $361.31.

6.      Plaintiff does not recall signing any forms from Defendants prior to or during the transport in which he consented to pay such sums for services provided by Defendants.

7.      Plaintiff Ballou was insured by Medicare, but at the time of the transport, he was only covered by Medicare Part A. As a result, Medicare did not pay anything toward the charges, leaving Plaintiff Ballou facing Defendants' efforts to collect what Defendants claim to be the full balance of $63,310.82.

8.      Mr. Ballou brings this action individually and on behalf of himself and a class of others similarly situated, against Defendants Air Methods Corporation and Rocky Mountain Holdings, LLC because he does not think he has any contractual relationship with Defendants. If he has any obligation to Defendants, he thinks it is only for the reasonable value of Defendants' services, which reasonable value is substantially less than Defendants billed him.

9.      Plaintiff has been harmed by Defendants' improper collection efforts, and further harm is threatened, from which harm Plaintiff seeks the protection of the Court on behalf of himself and others similarly situated.

10.     Documents related to the Defendant's claim are attached as Exhibit 1.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction pursuant to 28 U.S.C § 1331.

12.     The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which Plaintiff and members of the Class are citizens of states different from Defendants. 28 U.S.C § 1332.

13.     This court also has federal question jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and the ADA, 49 U.S.C. § 41713(b) (1).

14.     This Court has personal jurisdiction over Defendants because they are authorized to do business and are conducting business throughout the United States, including

Vermont; Defendants have sufficient minimum contacts with the various states of the United States, and the State of Vermont; and/or sufficiently avail themselves of the markets of the various states of the United States, including Vermont, to render proper the exercise of jurisdiction by this Court.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) (2) because a substantial portion of the acts or omissions complained of occurred in this District.

16.     Venue is also proper because: (a) Defendants are authorized to conduct business in this District and have intentionally availed itself of the laws and markets within this District; (b) do substantial business in this District; (c) are licensed by the State of Vermont as emergency Medical Services; and (d) are subject to personal jurisdiction in this District.

### Description of Plaintiff's Cause of Action.

17.     Plaintiff brings this action individually and on behalf of a class of others similarly situated,[1] against Defendants Air Methods Corporation and Rocky Mountain Holdings, LLC.

18.     Plaintiff and the Class are patients, the parents of minors transported, and representatives of the estates of deceased patients, transported by Defendants in emergent situations where there was no contractual relationship and no agreement with respect to the transport.

19.     Defendants seek to enforce a "financial responsibility" obligation upon the patients they transport based upon the assertion that the patients' mere transportation by them is an enforceable legal contract between them rather than upon any express or implied-in-fact contract. Defendants bill the patients (as more fully described below) their charged amounts and pursue collection efforts for any shortfall between their charged amounts, and third-party reimbursement,

---

[1] For simplicity, rather than reciting "and the Class" each time Plaintiff is mentioned, this pleading will refer to "Plaintiff." Such usage includes the class that Plaintiff seeks to represent.

or if no third-party coverage, then the entire amount. When the patients object to the charged amounts as unreasonable, coercive, or for any other defense, Defendants claim that their charged amount are plenary, and cannot be contested by virtue of the Airline Deregulation Act's ("ADA") pre-emption clause, preempting the application of any state law imposing or implying an agreement between them which the parties did not themselves voluntarily enter into. 49 U.S.C. §41713(b)(1) Defendants allege that they have a contract with Plaintiff that is created merely by Defendants transport them, rather than based on signature of any written contract or on any mutual assent of the transported patient to contract.

  20. The financial obligations that Defendants seek to enforce are contained in form documents, drafted by the Defendants, without any negotiation, discussion, or disclosure of material terms. Defendants contend that their form documents "verify or ratify" an alleged agreement Defendants contend was formed merely by their delivery of services. Defendants undertake collection efforts based on the allegation of a contract formed by transportation and initiate collection efforts thereafter. Defendants' claim of an enforceable agreement ("financial responsibility") based upon "acceptance" of emergency medical transportation is itself pre-empted by the ADA, however, and as such without any lawful authority. Nevertheless, Defendants persist in demanding payment for charges they have no legal authority to seek, seek to enforce compromised payments, and impose collection efforts, including damaging credit reports, when the ADA pre-empts all legal authority for "implied" agreement. Because of Defendants conduct, Plaintiffs seek for themselves and similarly situated parties a determination of the rights of the parties, whether or not any further relief is necessary and proper based upon the declarations determined.

21.     There is a live controversy regarding whether there is an enforceable contract among the parties, whether or not the financial responsibility obligations asserted by Defendants are pre-empted and, if an enforceable agreement does exist, what the terms of any contract may be. Determination of the existence or non-existence of an enforceable contract is Plaintiff's cause of action. Should the Court determine that an enforceable contract exist, Plaintiff next asks the Court to determine its terms regarding what, if any financial responsibility is owed by the Plaintiff to the Defendants. If an enforceable contract does not exist, for a declaration to that Plaintiff has no financial responsibility to Defendants, and for such further relief as is necessary and proper upon Plaintiffs application therefore based upon the declaration found.

## Introduction

22.     Plaintiff was determined by healthcare professionals to be suffering from an emergency medical condition under the Emergency Medical Transportation and Labor Act 42 USC §1395dd ("EMTALA") and that he suffered from an "emergency medical condition"[2] requiring immediate air transportation to an accepting medical facility capable of providing appropriate care. Defendants only provide emergency air transportation at the specific direction of a healthcare provider who certifies that air transport is medically necessary. The patient has no interaction with Defendants and does not request the transport. All transport is arranged by the healthcare provider. For individuals like Plaintiff, first responders or medical personnel determine whether a patient needs emergency air transport, contact the Defendants and

---

[2] "Emergency medical condition" is defined in EMTALA as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical treatment could reasonably result in: (i) placing the health of the individual (or with respect to a pregnant woman, the health of the woman or the unborn child) in serious jeopardy, (ii) serious impairment or bodily function, or (iii) serious dysfunction of any bodily organ or part."

arrange for the emergency transportation. The need for emergency transportation is acute in every instance. The transported patient does not engage in any negotiation with Defendants, and the transportation is not a voluntary undertaking, but rather under the duress of life-threatening or other serious medical conditions requiring immediate treatment at a hospital. Given the dire circumstances, express or informed consent or negotiation of essential terms does not occur. The patients are frequently unconscious, and in all instances incapable of giving meaningful express or informed consent, or otherwise voluntarily assenting to the transportation by the Defendants.

23.     The Vermont Department of Health regulates Defendants as "emergency medical personnel" and provides standards and procedures that declare "unprofessional conduct" to include "obtaining a fee by fraud or misrepresentation", "exercising undue influence on or taking advantage of patient", which conduct is declared to be as "dangerous or injurious".   That Defendants impose the onerous and one-side financial responsibility on the patient under these circumstances violates these standards.[3]

24.     This case is brought on behalf of patients transported under emergent medical circumstances. By virtue of the circumstances, no contractual relationship is formed prior to transport, the Plaintiff's medical condition is emergent, and Defendants do not disclose the amounts they intend to charge for such transportation. Plaintiff has no legal obligation to pay the Defendants the price charged for services, and one may not be imposed them.

25.     Defendants bill Plaintiff amounts that vastly exceed both the cost to provide the transport and the fair market value of the transport. Defendants' own executives admitted in a television interview that the "fair charge" for Defendants' services would be, on average, around

---

[3] Vermont Department of Health regulations, Chapter 7, Subchapter 1, Sec. 14.1.5.

$12,000, but Defendants charge four times that amount and more, with the average charged around $48,000, four times the "fair charge."

26.    Defendants seek to enter into network agreement with health care insurers and other third-party payors (hereinafter collectively "third-party payors") to assure payment for their emergency air transportation charges. Under these network agreements, third-party payors agree to pay negotiated amounts, and Defendants agree not to balance bill the insured patient for any amount over the network-negotiated amount, i.e., the network negotiated amount. In order to enhance their negotiating position with those third-party payors network, Defendants use the threat of crushing medical charges imposed on the "out-of-network" insureds in order to leverage more favorable terms from the network. Defendants refuse to reduce their charged amounts to out of network patients in order to preserve their negotiation leverage.

27.    Absent a network agreement, Defendants seek payment from third-party payors. These payors generally are only obligated to pay for reasonable charges for necessary medical expenses. Nevertheless, Defendants seek payment from third party payors for the entire amount they charge with the similar threat that if the payors to not reimburse the full charged amount, they will proceed against their insureds irrespective of the reasonableness of the charged amounts. Defendants "balance bill" for all unreimbursed amounts even though the charged amounts were never agreed to and already found to be unreasonable through the regular insurance coverage system.  Because the third-party payors only pay the reasonable amount for Defendants' services, Defendants seek to collect the difference through balance billing the Plaintiff.

28.    Under the facts of this case, it is Defendants' practice to respond to first responder requests for emergency air transportation for critically ill patients. Defendants transport the patients but do not negotiate any agreement with the critically injured/ill patients for the costs of

this transportation. The reasons are obvious; a critically injured patient cannot voluntarily contract. Nor do the Defendants inform the patient of the cost that will be charged by Defendants for their transportation service before those services are provided. Rather, Defendants send their bill to the third-party payor and then balance bill the patient once that payor has made its coverage determination, and if no coverage, Defendants bill the patient for the entire amount.

29.     Defendants could have contracted around this unfortunate circumstance. Defendants could have negotiated with various insurance carriers to establish a network rate. Defendants could have posted their rates and undertaken to establish a framework for charging a reasonable scheduled rate compliant with existing contractual frameworks for rates in an emergency context. Defendants could expressly concede that they enter into contracts without specifying a price with the reasonable expectation that courts will establish the amount they are entitled to recover. The foregoing framework could establish a valid basis for recovery of an implied-in-fact contract. However, Defendants refuse to undertake these efforts because such efforts would require Defendants to accept the "reasonable worth" of their services instead of whatever outrageous rates Defendants see fit to seek from their patients.

30.     As is customary in healthcare, patients routinely assign their insurance benefits to the healthcare provider so the provider may file claims with third party insurers to obtain payment benefits. Defendants use the assignment to file claims directly with third-party payors to obtain payment, asserting that their services were for necessary, emergency medical transportation. The third-party payors make coverage determinations and issue an Explanation of Benefits detailing the charged amounts and the reasons for their coverage determinations. This is followed by an appeal process which Defendants may, and frequently do initiate.

31.     As part of their predatory scheme. Defendants, pre and post transportation, have Plaintiff sign Assignment of Benefits (AOB) and Authorization and Consent (A&C) prepared by Defendants without negotiation nor modification. The forms are drafted by Defendants and contain a "Financial Responsibility" which states: "Notwithstanding any other provisions herein, I agree that if my Insurer denies all or any part of Provider's charges for any reason, or if I have no insurance, I will be personally responsible for payment of Provider's charges. Should my account be referred to an attorney or collection agency, I agree to pay all actual attorneys' fees and collection expenses." The Defendants impose these onerous conditions upon the patient at a time when the patient is in an emergency medical condition in need of immediate transportation. The patient's medical condition places Patient is at an economic disadvantage and is a contract of adhesion.

32.     These forms do not disclose the prices Defendants charge for their services, which in fact the Defendants never disclose, and seek to bind Plaintiff to pay *whatever* Defendants charge irrespective of the reasonableness of the charged amounts. These documents are not voluntary agreements, do not disclose any price terms and are unenforceable.

33.     The AOB and A&C are unsupported by any consideration, or mutuality of assent. Defendants claim however that the Financial Responsibility provision applies and is the legal obligation of the patient merely because the patient "did not refuse" the transport, irrespective of their ability to so do.

34.     In all cases of the Plaintiff, the third-party payors determined that the Defendants services were for emergent and medically necessary, but that the amounts charged by Defendants were unreasonable, and pay an amount determined to be reasonable. Defendants enlist the

assistance of the Plaintiff in the process and provides form documents for the Plaintiff to sign and transmit to their third-party insurers.

35.     However, where the Plaintiff's insurers or third-party payors do not have network agreements with the Defendants, and reimburse only the reasonable amount for the Defendants' services, Defendants "balance bill" the Plaintiff the difference between third party payor reimbursement, and Defendants charged amount.  The balance billing process also initiates collection efforts, including dunning letters, telephone calls seeking payment, threats to turn the bills over to collection agencies, coercing  payment plans, imposing medical liens against third party recovery, turning the unpaid amounts over to collection agencies, making claims against the estates of deceased patients, imposes cost of collection, attorney's fees and interest on unpaid amounts, and, in some instances,  filing state-court breach of contract claims and other suits against patients.

36.     The Defendants' charges are so exorbitant that almost no third-party payor pays them in full, frequently leaving a staggering amount to be balance billed.  Because the Defendants' balance bills are so high, frequently in the $10,000s, the almost no Plaintiff can pay them and Defendants' actual collection rates for these receivables are less than 10%.

37.     After appeals for third-party payment are exhausted, Defendants proceed with collection efforts against the Plaintiff.

38.     Upon information and belief Defendants engage in this practice to:

a.     increase the economic pain on the Plaintiff so as to give themselves leverage against third party payors in appealing reimbursement rates;

b.     threaten Plaintiff with harsh collection efforts to coerce them into negotiated payment plans; and

      c.     to gain negotiating leverage in obtaining terms more favorable to them in network agreements with third party payors

39.     Defendants' billing practices as stated are predatory, unconscionable, and intended to inflict sever economic pain on critically injured Plaintiff solely for the benefit of the Defendants. Essentially a "your money or your life" scheme.

40.     When a patient contests the reasonableness of the charges, Defendants assert that they have plenary power under the ADA to set whatever price they choose for transportation of patients in extremis who have no ability to assent voluntarily to the transportation, or to pay the exorbitant amounts Defendants charge, and this Court, and all other courts, can only act as collection agencies for their charged amounts.

41.     Plaintiff and the Class include all those who were charged for emergency air transportation by the Defendants for emergency air transportation.

42.     After the transportation is complete, Defendants send a statement for the transportation showing a "base rate" and a "mileage" charge (collectively "charged amount") and demand payment from Plaintiff. The rate that will be charged by Defendants for the "base charge" and "mileage" is known to Defendants prior the transportation, but it is not published on their web site nor otherwise disclosed to Plaintiff prior to transport. The refusal by Defendants to disclose prices is consistent with their longstanding argument that their pricing is some sort of trade secret. The legal impact, however, is that Defendant seeks to impose a silent price term on critically injured Plaintiff who have never voluntarily contracted with the Defendants.

43.     Because the air transportation services provided by the Defendants occur under a medical emergency, the patient transported, in fact and law suffers from the duress of a medical emergency making them incapable of entering any voluntary undertaking with the Defendants.

44.     Ascertainability of the patients transported, and the identity of all Plaintiff can be determined from Defendants' Information Technology infrastructure. Defendants track every transport, and all related collection efforts. Defendants employ standard form documents including AOB, and A&C forms. These forms are executed irrespective of whether the transported patients is capable of assent. On information and belief, if the patient cannot execute the authorization, a Crew Member of Defendants will sign the agreement on behalf of the patient and indicate the reason why the patient cannot sign, or have someone else sign on behalf of the patient. However, as noted above, Defendants contend that the transportation of a patient creates the contract, not a signature on a form.

45.     The Class includes the patient transported, the legal custodian of the patient (in the case of spouses or minor or mentally disabled patients), the estate of a deceased patient, or any person or entity from whom Defendant has demanded payment for emergency air transport. For each transport, Defendants maintain detailed records with a unique identifier containing the identity of the patient transported and all claims by Defendants for payment.

46.     Defendants send a statement for the charged amount to the Plaintiff and demands payments for prices that the Plaintiff and Class never agreed to pay. In the absence of payment, Defendants initiate collections, report the amount charged as an unpaid bill to credit reporting agencies, engage in collection efforts, seek to enforce liens, and initiate lawsuits in state courts, or seek to enforce state law related to the price or services they provide. Defendants demand payment, initiate collection efforts, and threaten suit in state court for judgments based upon prices never disclosed and agreed upon for the services provided by the Defendants in spite of the fact that Defendants knew, prior to the transportation, the prices they would charge, and that the ADA pre-empts the Defendants' legal entitlement to payment.

**Defendants' Prior State Court Litigation**

47.     On information and belief, Defendants have, without any legal entitlement to payment:

    a.      filed multiple state-court breach-of-contract suits in multiple states to collect their charges, both by direct actions against a transported person and by way of making claims in interpleader actions;

    b.      filed proof of claims in multiple bankruptcy cases asserting a right to be paid based on state-law breach-of-contract theories;

    c.      filed claims in estate cases to recover their charges for transportation of a deceased person in multiple cases;

    d.      sought more compensation from Medicare, Medicaid and Tricare insureds than is allowed under the relevant payment schedule for providers that accept assignment of benefits from Medicare, Medicaid and Tricare patients;

    e.      sought more compensation from patients with commercial insurance, employer-sponsored health benefits plans, and other non-governmental third-party payers than what the insurance industry has determined to be the uniform, customary, and reasonable rate in each locality;

    f.      coerced class members to enter payment plans to pay their full billed amount in monthly installments paid over decades with interest; and

    g.      enforced, or sought to enforce, subrogation claims or liens against personal injury claims or recoveries seeking their full-billed amounts.

48.     Defendants' collection efforts against Plaintiff were ongoing at the time this action was filed, and Defendants will continue efforts to collect their improperly billed amounts in the absence of relief granted by the Court in this action.

49.     There is a live and ongoing dispute between Plaintiff and Defendants.

## Class Action Allegations

50.     This action is brought and may be maintained as a class action pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b) (1), (b) (2), and (b) (3), are met with respect to the Class defined as follows:

51.     All persons billed by Defendants, or who paid a bill from Defendants, for air medical transport that Defendants carried out from a pickup location in Vermont.

> Excluded from both Classes are Defendants, any entity in which Defendants have a controlling interest or which have a controlling interest of Defendant, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

52.     Plaintiff expect to seek certification of the Class under Rules 23(b) (1), (b) (2), (b) (3), and (c) (4) of the Federal Rules of Civil Procedure.

53.     The Class will include only persons having viable claims under the applicable statute of limitation.

54.     The Class claims the benefit of tolling because of previous class cases filed against Defendants. *See American Pipe & Constr. Co. v. Utah,* 414 U.S. 538 (1974).

55.     Rule 23 permits Plaintiff the right to redefine the Class prior to class certification.

56.     The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class Members is unknown as such information is in the exclusive control of Defendants. However, due to the nature of the trade and commerce involved, Plaintiff believe the Proposed Class consists of thousands of Class Members. Defendants

themselves claim that they transport more than 100,000 patients each year, operating out of more than 300 bases in the 48 contiguous states.

57.     Common questions of law and fact affect the rights of each Class Member and a common relief by way of declaratory judgment and injunction, including at least the following:

a.     Did the Plaintiff enter into any voluntary agreement to pay the Defendants their charged amounts?

b.     Did Defendants disclose the prices, including, but not limited to their fixed mileage price and "helicopter rotor base" price for the transportation to Plaintiff prior to transportation?

c.     Were Defendants' services for the emergency air transportation of critically injured Plaintiff/patients?

d.     Did the critically injured patients, including the Plaintiff, or a legally authorized representatives, voluntarily agree to pay Defendants whatever Defendants charged without any right on behalf of the patient or Plaintiff to contest the reasonableness of those charges?

e.     Can a patient needing emergent medical air transportation voluntarily assent to an enforceable contract for that transportation where the price terms is silent, and the ADA prevents the Court from supplying a price?

f.     What is the contractual relationship between Defendants and the Plaintiff, if any?

g.     Does the ADA preempt Defendants from collecting a reasonable amount, and or any amount, from Plaintiff and Class Members for transport?

h.     What is Defendants' legal entitlement to payment from the Plaintiff or from third party payors on behalf of the Plaintiff under Vermont law?

i.     Whether the Court should grant injunctive relief to Plaintiff who did not engage in any voluntary undertaking with the Defendants for their transportation prevent collection efforts by Defendants for their charged amounts?

j.      Whether Plaintiff who paid or had a third-party payor pay some or all of the charges entitled to restitutionary relief for payment where there is no obligation to pay?

k.      Whether Defendants should be enjoined from seeking to collect amounts not agreed to by the parties.

l.      Whether Defendants are entitled any payment from Plaintiff and, if so, the proper mechanism to determine the amount owed?

58.      The claims and defenses of the n a m e d Plaintiff are typical of the claims and defenses of the Class. Defendants sought to collect an alleged debt for which they have no valid basis for collection since any efforts to impose a price by any court would be preempted under the ADA.

59.      Plaintiff will fairly and adequately assert and protect the interests of the Class.

60.      A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.      The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

b.      Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

c.      Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

d.      Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

e.      There are no unusual legal or factual issues which would create manageability problems; and

      f.     Class adjudication is superior to individual adjudication of the claims at issue in this case.

61.    In this action, Patients, on behalf of themselves and the Proposed Class, seek to enjoin Defendant from engaging in collection of their charged amount, and;

      a.    for Declarations regarding the respective legal rights of the parties with respect to Patients' obligation to pay, and Defendants' legal right to receive payment in the absence of an express contract;

      b.    for Declarations as to whether any contract exists between Defendants and Patients, and if so, the terms of their bargain;

      c.    for Declarations regarding the legal rights of the Defendants to receive payment of the any sum, or any sum exceeding the reasonable amount determined by Patients' third-party payors;

      d.    for Declarations as to the right of Defendants to initiate and pursue collection efforts with respect to Balance Billed charges under the circumstances; and,

      e.    for Declarations the legal rights of the parties with respect to the application of the ADA, 49 U.S.C. § 41713(b) (1) upon the legal right of Defendants to charge and the legal obligation of the Patients to pay for air medical transportation services beyond reasonable value of those charges.

## **CAUSES OF ACTION**

### **For a First Cause of Action**

#### **Injunctive and Declaratory Relief Pursuant to 28 U.S.C. § 2201**

62.    Plaintiff incorporates the previous paragraphs outside of this Count as though set forth herein.

63.    Defendants assert that a contract exists between themselves and Plaintiff entitling Defendants to undertake collection activities. Plaintiff asserts that no contract, at least no

enforceable contract, exists between himself and Defendants. Plaintiff first asks the Court to make the baseline determination of whether any contract exists between the parties.

64.     Second, if the Court determines that contract exists, Plaintiff asks the Court to determine the missing terms of any contract that exists. Most importantly, if the Court determines that a contract exists, Plaintiff asks the Court to determine the amount of compensation to which Defendants are entitled under such contract.

65.     Prior to the provision of services, no negotiation of contract terms regarding the price of Defendants' transportation services took place and Plaintiff, the Class and Defendants did not enter into any voluntary agreement to pay Defendants' charged amounts for transport services.

66.     Defendants have engaged in and threatened to engage in –

a.      collection of the amount charged against the Plaintiff, irrespective of whether the amount charged is a reasonable value for the services provided;

b.      have wrongfully engaged Plaintiff in negotiations with their third-party insurers to pay medical bills they did not agree to pay; and

c.      sought collection of their charged amounts when their legal entitlement is to payment is preempted by the ADA.

67.     Defendants have engaged in and threaten collection efforts to recover, accumulated interest and fees on the unpaid balance, reported the unpaid charged amount as Bad Debt to credit reporting agencies, and ultimately filed suit in state court for the amounts charged, or for the purpose of coercing Patients in compromise payments that they do not owe.

68.     In the course of collecting its charged amounts, especially when sued by those charged, Defendants assert that all state law is preempted by the ADA, denying Patients notice and an opportunity to be heard on critical questions of Defendants' entitlement to payment, including but not limited to whether there is an agreement between the parties to pay Defendants charged amount, whether the charged amount is reasonable for the services it provides, and whether any mutual assent was manifest prior to the transportation of the patient.

69.     Plaintiff seeks injunctive and declaratory relief for the purposes of determining questions of actual controversy between the Patients and Defendants.

70.     Defendants have acted in a uniform manner in (a) failing to enter into express agreements with respect to their charged amount for transportation services before rendering those services, (b) seeking payment from third party payors, (c) balance billing Patients in the event the charged amounts are not paid, (d) reporting unpaid balances as Bad debt even though no determination of the reasonableness of the charge has been determined, (e) engaging in collection efforts, including suit in state court, or under state law, and (f) coercing compromise payments that are not legally owed.

71.     Defendants have acted or refused to act on grounds that apply generally to Patients such that declaratory relief to determine (a) whether Defendants' Patients have an enforceable agreement for the amount charged, (b) the amount to which Defendants are entitled in the absence of an agreement for payment, and (c) whether and to what extent the ADA pre-empts the employment of the common law of contracts to these factual circumstances, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Proposed Class as a whole within the meaning of Fed. R. Civ. P. 23.

72.     There is an actual dispute and controversy between Patients and Defendants as to whether Defendants can (a) demand payment for services with respect to which the price term is silent, (b) engage in collection efforts where no legally enforceable contract exists, (c) impose interest and costs of collection on Plaintiff and the Class, (d) attempt to collect the amounts charged under the circumstances, and (e) seek and receive third party payment for the legal obligations of plan beneficiaries beyond the amount determined by third party payors of the reasonableness of the charges.

73.     Defendants have demanded payment from Plaintiff, and initiated collection efforts claiming that the unpaid amounts demanded are bad debts and referred the demands to collection thereby adversely affecting Plaintiff's credit.

74.     Plaintiff has no adequate remedy at law.

75.     Plaintiff seeks declarations to determine their rights and the rights of the Proposed Class Members, in particular:

a.      The Court finds that Defendants and Plaintiff, and the Class did not enter into any contract, either express or implied-in-fact, for Plaintiff and the Class to pay the amounts charged by the Defendants for the transportation services it provided;

b.      The Court finds that Defendants have engaged in collection efforts against and the Class for amounts that the Plaintiff and the Class did not contractually agree to pay;

c.      The Court finds that Defendants have engaged in collection efforts against Plaintiff and the Class for amounts concerning which there was no mutual assent manifest by the Plaintiff and the Class prior to the rendering of the services charged;

d.      The ADA pre-empts the imposition of any state common law contract principles that impose terms upon Plaintiff which those parties did not expressly assent to prior to the air medical transportation services provided to them;

e.      The Court finds that the emergency medical circumstances of Defendants' medical air transportation were such that patients transported cannot be implied to have entered into any contract for transportation, and in particular any agreement to pay whatever Defendants charged;

f.      The Court finds that ADA pre-empts application of state law imposing or implying any agreement upon Plaintiff to pay Defendants charged amounts;

g.      The Court finds that Plaintiff's third-party payors' determinations of the reasonable value of the Defendants' services is sufficient evidence of reasonableness under the circumstance where Defendants have submitted a claim to third-party payors; and

h.      The Court finds that Defendants' collection of any sums, absent an enforceable contract with the Plaintiff charged, was unlawful and the sums received by Defendants disgorged.

76.     Plaintiff and the Proposed Class further seek a prospective order from the Court requiring Defendants to: (1) cease all balance billing and collection efforts with respect to

outstanding bills for air medical transportation service until this Court determines Defendants'
legal entitlement to payment of its charged amounts makes a determination of the methodology
for determining their reasonable value; and (2) account for all sums collected for air medical
transportation services provided to Plaintiff.

77.    Defendants' collection efforts damage the credit of Plaintiff and the Class, have
caused, and continue to cause Plaintiff and those in the Plaintiff Class anxiety, embarrassment and
humiliation; have caused them to incur legal fees and litigation expenses; exposed Plaintiff and
the Class to claims for interest on unpaid Defendants' charges and vexing and harassing collection
efforts. Because of Defendants' practices as described above, Plaintiff and the Proposed Class have
suffered, and will continue to suffer, irreparable harm and injury.

78.    Accordingly, Plaintiff and Members of the Proposed Class respectfully ask the
Court to issue an injunction ordering Defendants to (1) cease and desist their practice of filing
third-party reimbursement claims absent an enforceable contract to collect their charged amount;
and (2) provide for an accounting of all sums received by Defendants during the last 10 years,
where Defendants submitted a claim to third-party payors payment without basing that claim on a
contract with the transported party.

## **PRAYER FOR RELIEF**

**THEREFORE**, Plaintiff, individually and on behalf of the Class of persons described
herein, prays for an Order as follows:

a) Entering an order certifying the Classes (and subclasses, if applicable), designating
   Plaintiff as the class representatives, and designating the undersigned as class counsel;

b) Awarding Plaintiff all costs and disbursements, including attorneys' fees, experts' fees,
   and other class action related expenses;

c) Imposing a constructive trust, where appropriate, on amounts received by Defendants from
   third-parties, or Plaintiff in the absence of contract with the transported party;

d) Issuing appropriate declaratory and injunctive relief, as requested in the Complaint, including to declare the whether the parties have an enforceable contract for the payment of Defendants' services together with the terms of that contract; the respective rights and obligations under the contract; and, the impact of the ADA preemption provisions have on the parties respective rights and obligations under that contract;

e) Awarding pre-judgment and post-judgment interest;

f) Providing Notice to the Class, at Defendants' expenses of the declaration and advising them that their debt to Defendants is extinguished, and notice to all credit reporting agencies that Plaintiffs and the Class own nothing; and

g) Granting such further relief as the law allows and the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand a trial by jury on all claims and issues.

Dated: August 25, 2021                    Respectfully submitted,

                                          PAUL FRANK + COLLINS, P.C.

                              BY:         _Stephen Soule, Esq._

                                          Stephen Soule, Esq.
                                          Pamela L.P. Eaton, Esq.
                                          P.O. Box 1307
                                          Burlington, Vermont 05401
                                          (802) 658-2311
                                          ssoule@pfclaw.com
                                          peaton@pfclaw.com

                                                 -and-

                                          Edward L. White, Esq. (*pro hac vice*)
                                          EDWARD L. WHITE, P.C.
                                          829 E. 33rd Street
                                          Edmond, OK 73013
                                          Telephone: (405) 810-8188
                                          Fax: (405) 608-0971
                                          ed@edwhitelaw.com

                                          **ATTORNEYS FOR PLAINTIFF AND
                                          ALL OTHERS SIMILARLY SITUATED**

### CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2021, the foregoing document was served upon the following via the Court's electronic filing system and by email:

Walter E. Judge, Jr., Esq.
wjudge@drm.com

Matthew J. Smith, Esq. (*pro hac vice*)
Jessica J. Smith, Esq. (*pro hac vice*)
mjsmith@hollandhart.com
jjsmith@hollandhart.com

**ATTORNEYS FOR DEFENDANTS**

BY: _pamelalpeaton_

8331025_6:13732-00001